Katheirne "Kacey" McBroom (SBN 223559)
MCBROOM LAW, P.C.
242 26th Street, Unit C
Santa Monica, CA 90402
Telephone: (310) 666-5198
Email: kmcbroom@mcbroomlegal.com

Attorney for Defendant
JEFFREY SPENCER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JEFFREY SPENCER, at al,<br>Defendant. | Case No.: 2:25-cr-00545-AB-1<br><br>*Before the Hon. Andre Birotte, Jr.*<br><br>**DEFENDANT JEFFREY SPENCER'S SENTENCING MEMORANDUM**<br><br>Date: July 24, 2026<br>Time: 1:30 p.m.<br>Court: 7B |

To The Honorable Andre Birotte, Jr., United States District Judge; The United States Attorney's Office and Its Attorneys of Record; Assistant United States Attorney Jason Pang; United States Probation Officer Shani Kochav; and/or her representatives:

Defendant Jeffrey Spencer, by and through counsel, hereby files his Sentencing Memorandum.

Dated: July 3, 2026

*Katherine C. McBroom*
KATHERINE C. MCBROOM
Attorney for Defendant
JEFFREY SPENCER

# MEMORANDUM

## I. INTRODUCTION

Jeffrey Spencer ("Mr. Spencer") stands before the Court having accepted responsibility for a serious offense that violated the public trust. He does not seek to minimize his conduct, nor does he ask this Court to excuse it. From the outset of this case, Mr. Spencer accepted responsibility, cooperated with the probation officer during the presentence investigation, expressed genuine remorse, and entered a timely guilty plea rather than requiring the Government to expend additional resources preparing for trial.

A sentencing hearing is not intended to examine a single chapter of a person's life in isolation. Section 3553(a) requires the Court to consider the whole person. For nearly thirty years before this offense, Mr. Spencer devoted his career to public service with the Federal Bureau of Investigation. He built a stable family, raised children, cared for aging parents, served his church and community, and earned the respect of friends, neighbors, and even fellow law enforcement officers. Those who know him best uniformly describe him as compassionate, dependable, humble, and selfless—qualities that are entirely inconsistent with the conduct that brings him before this Court.

The United States Probation Office ("USPO") recognized that reality by recommending a sentence of probation. The defense respectfully submits that Probation reached the correct conclusion. The remaining issue is whether a $20,000 fine—despite the absence of any actual pecuniary loss to the Government and despite Mr. Spencer's ongoing family obligations—is greater than necessary to accomplish the purposes of sentencing. It is.

The defense agrees with the USPO's recommendation that a probationary sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The advisory guideline range is 8 to 14 months' imprisonment; nevertheless, Probation correctly concluded that this is one of those uncommon cases in which a non-custodial sentence adequately reflects the

seriousness of the offense while recognizing the defendant's history, characteristics, and extraordinarily low likelihood of recidivism.

The defense respectfully requests that the Court adopt the recommendation of probation. The defense further requests that the Court impose only a modest fine, substantially below the amount recommended in the Presentence Report ("PSR") because there was no actual pecuniary loss to the Government, restitution is not appropriate, and a significant financial penalty would unnecessarily impair Mr. Spencer's ability to meet his ongoing financial obligations after the loss of the career to which he devoted nearly thirty years.

## II. OBJECTIONS TO THE PRESENTENCE REPORT

The defense concurs with the USPO's recommendation of a probationary sentence.

The defense objects to the recommended fine of $20,000. The PSR concludes that Mr. Spencer has the ability to make an immediate payment of $20,000 based primarily upon his retirement savings and home equity. Respectfully, those assets do not accurately reflect Mr. Spencer's present ability to absorb a substantial financial penalty.

When determining whether to impose a fine, as well as the amount and method of payment, the Court must consider specific statutory factors and advisory guidelines. Both 18 USC §3572 and U.S.S.G. § 5E1.2(d) direct the Court to evaluate the defendant's income, earning capacity, and financial resources. Most critically, the Court must consider the financial burden that a fine will impose upon the defendant and any dependents relative to alternative punishments. 18 USC §3572, U.S.S.G. Appx. §5E1.2.

The largest component of Mr. Spencer's reported net worth consists of retirement savings accumulated over decades of public service. Those funds represent retirement security earned over the course of nearly thirty years of employment, not readily available disposable income. Requiring substantial liquidation of retirement assets

would impose tax consequences, diminish the financial security those savings were intended to provide, and effectively punish not only Mr. Spencer but also his family. Likewise, the equity in the family residence is not a liquid asset available to satisfy a criminal fine without placing the family's housing stability at risk.

The more meaningful measure of Mr. Spencer's financial circumstances is his present monthly cash flow. As reflected in the PSR, Mr. Spencer's household income only modestly exceeds his family's recurring monthly obligations. Those obligations include the mortgage on the family residence, child support, insurance, medical expenses, and the ordinary expenses associated with supporting his household. After accounting for those obligations, the family has approximately $470 in monthly discretionary cash flow.

Moreover, the offense has already produced severe financial consequences. Mr. Spencer lost the employment that had supported his family for decades. Additionally, his future earning capacity has been substantially diminished by both the felony conviction and the loss of his federal career.

## III. A PROBATIONARY SENTENCE FULLY SATIFIES THE PURPOSES OF SENTENCING

This is not a case involving violence, abuse of the public, or continuing criminal conduct. Mr. Spencer has no criminal history whatsoever and qualifies as a zero-point offender under the Sentencing Guidelines. He immediately accepted responsibility, entered a timely guilty plea, and has fully complied with every condition of pretrial supervision.

The Sentencing Commission has recognized that probationary sentences are generally appropriate for defendants whose guideline ranges fall within Zones A and B and who qualify for the zero-point offender adjustment. Here, the USPO appropriately recognized this principle in recommending probation.

Nothing about Mr. Spencer's history suggests any propensity toward criminal behavior. Prior to this offense he spent nearly three decades employed by the Federal

Bureau of Investigation, maintained stable employment, supported his family, and lived an otherwise law-abiding life. Further, specific deterrence has already been achieved. Mr. Spencer resigned from the FBI shortly after these proceedings began, forfeiting the career that had defined his professional life. And he now faces the lifelong consequences of a federal felony conviction, including the permanent loss of the position he held for nearly thirty years and the reputational consequences that accompany such a conviction. Those consequences are substantial punishment in their own right.

General deterrence likewise does not require imprisonment. A felony conviction, a term of probation, public accountability, and the permanent loss of a respected federal career send a powerful message to other public employees that violations of the public trust carry significant consequences.

## IV. THE NATURE OF THE OFFENSE SUPPORTS A NON-CUSTODIAL SENTENCE

One of the central purposes of sentencing is to ensure that punishment reflects not only the offense but also the individual who committed it. 18 U.S.C. § 3553(a)(1). When the Court considers Mr. Spencer's life as a whole, it becomes apparent that this offense is not representative of the person he has spent decades striving to be.

Mr. Spencer was raised in Monterey Park by hardworking parents who instilled in him the importance of faith, family, and service. He is one of five children and remains close to his siblings. Despite difficult experiences in childhood, outlined in the Presentence Report ("PSR"), he built a remarkably stable and productive adult life.

After graduating from high school, Mr. Spencer pursued higher education, earning both an associate's degree and a bachelor's degree in Electronics Engineering Technology. He then devoted nearly thirty years of his professional life to public service with the Federal Bureau of Investigation, eventually serving as the lead electronics technician for the Los Angeles Field Office.

Those who know Mr. Spencer best consistently describe a man whose priorities have always been his family and his community:

His longtime friend Lauren Phui, who has known him for approximately thirty-five years, describes the extraordinary care Mr. Spencer has provided to his mother after she fractured her femur. Rather than simply providing a place to stay, Mr. Spencer modified the family home to accommodate her disabilities, personally remodeled the bathroom to improve accessibility, and spent time with her each day during her lengthy recovery so she would not feel isolated. Ms. Phui writes that "caring for someone who is seriously injured requires an immense amount of patience, and Jeffery and his family rose to that challenge with compassion and dedication." (Exhibit A, Character Letters.)

She also describes decades of observing Mr. Spencer quietly serving others through church service projects and helping families move without hesitation. In her words, "He is the kind of person who notices when others are in need and steps forward without hesitation." (*Id.*)

His neighbor Scott Stratton echoes those observations. Having spent years with the Spencer family, Mr. Stratton describes a husband and father whose life revolves around work and family. He explains that after Mr. Spencer unexpectedly lost his principal source of income, he immediately found new ways to support his family, building a security business while simultaneously working long hours installing security systems for large events. As Mr. Stratton observes, "Family and work are the major priorities in his life. He is not apt to spend time elsewhere for his own pleasure." (*Id.*)

Mr. Stratton also recounts Mr. Spencer's willingness to help friends whenever they encounter technical problems, even assisting him over the telephone while working three time zones away. He summarizes Mr. Spencer simply: "He is always there when others need help even when it's not convenient." (*Id.*)

Perhaps most compelling is the letter submitted by Los Angeles County Deputy Sheriff Robin Soukup. Deputy Soukup has spent twenty years in law enforcement. He fully appreciates the importance of accountability and the seriousness of criminal

conduct. Nevertheless, after knowing Mr. Spencer for approximately a decade, he tells the Court: "If I did not sincerely believe in Jeff's character and integrity, I would not be willing to place my name and professional reputation behind this letter." (*Id.*) Deputy Soukup further explains that the conduct before the Court "is inconsistent with the character I have observed," describing Mr. Spencer as "a man of integrity, compassion and humility." (*Id.*)

These letters are remarkable, not because they minimize Mr. Spencer's conduct -- they do not—but because they come from individuals who have known him for decades and who uniformly describe the same qualities: service, humility, dependability, generosity, and devotion to family.

Their observations are entirely consistent with the information contained in the PSR. The PSR reflects that Mr. Spencer remains closely connected with his siblings, maintains meaningful relationships with his children, continues supporting his minor children, enjoys a stable marriage, and has worked continuously throughout his adult life. It further reflects that even after suffering multiple serious orthopedic injuries, including a shattered heel requiring several surgeries and ongoing chronic pain, he continued working and supporting his family rather than allowing those setbacks to define him.

This offense should be viewed within the context of that lifetime—not because it excuses the conduct, but because § 3553(a) requires the Court to sentence the whole person rather than the worst decision he has ever made. Mr. Spencer fully recognizes that his conduct undermined the integrity of the federal procurement process. He has accepted responsibility and has expressed genuine remorse for his actions. At the same time, this case presents an important distinguishing characteristic. Unlike many fraud cases, the Government has never established an actual monetary loss. The PSR explains that the government could not determine whether the FBI paid more for the equipment than it otherwise would have paid in a competitive bidding process. As a result, no loss amount could be calculated, and restitution is not appropriate. The absence of a

calculable financial loss does not excuse the offense. It does, however, bear directly on what punishment is sufficient under § 3553(a). The offense impaired the integrity of the procurement process, but it did not result in an identifiable financial loss to taxpayers requiring restitution or compensation. This distinction supports the conclusion that probation, rather than imprisonment, appropriately reflects the seriousness of the offense.

## V. THE PROPOSED $20,000 FINE IS GREATER THAN NECESSARY

The defense respectfully requests that the Court impose only a modest fine. Federal law explicitly recognizes that a fine should not be imposed or structured in a manner that creates an unsustainable financial hardship on a defendant's family or dependents. Under 18 USC §3572, the Court is mandated to consider the burden that the fine will impose upon the defendant and any person who is financially dependent on the defendant. This statutory directive is mirrored in U.S.S.G. § 5E1.2(d)(3), which requires the court to assess the burden of the fine on the defendant and his dependents. Furthermore, if a defendant establishes that paying a fine in a single lump sum would have an "unduly severe impact" on him or his dependents, the guidelines instruct that the court should establish an installment schedule rather than requiring immediate payment.

As set forth above, Mr. Spencer's reported net worth consists primarily of retirement savings earned over the course of nearly thirty years of employment and equity in the family residence. Liquidation of retirement assets would impose tax consequences and diminish the financial security those savings were intended to provide. Further, the family residence is not a liquid asset available to satisfy a fine without placing the family's housing stability at risk. Finally, Mr. Spencer's monthly cashflow, after accounting for monthly obligations such as the mortgage, child support, and insurance, is approximately $470.

While the Ninth Circuit has not explicitly addressed traditional employer-sponsored retirement savings accounts (such as 401ks), the court has directly addressed

related financial assets. In *United States v. Sager*, 227 F.3d 1138 (9th Cir. 2000), the defendant filed an objection to the PSR's recommended $10,000 fine as unduly burdensome based on the fact that he would be required to cash in his life insurance policy, due to the family negative monthly cash flow, to satisfy the fine. *Id.* at 1147. *Sager* reiterated the requirements of U.S.S.G. § 5E1.2(a) directing the court to consider defendant's ability to pay the fine and the burden imposed by the fine on the defendant and his dependents. *Id.*

> [I]f a defendant establishes inability to pay a fine in either a lump sum or through an installment plan, or if the fine would unduly burden the defendant's dependents, a court may impose a lesser fine or waive the fine and must consider 'alternative sanctions [such as community service] in lieu of all or a portion of the fine." U.S.S.G. §5E1.2(e).

With regard to the family residence, in *United States v. Bottrell,* 1991 U.S. App. LEXIS 17509 (9th Cir. 1991), the Court vacated the fine because the district court failed to make any finding regarding the defendant's ability to pay, illustrating that disputed or unresolved real property assets must be properly evaluated under the required statutory and Guideline factors . *Id.* at 5.

Here, although the Guidelines provide for a fine range of $4,000 to $40,000, there was no actual pecuniary loss to the government and restitution is unnecessary because no calculable loss exists. In many fraud cases, a substantial fine serves an additional punitive purpose because identifiable victims have suffered economic harm. Here, however, the government has acknowledged that it cannot establish any calculable pecuniary loss. Thus, while Mr. Spencer unquestionably damaged the integrity of the procurement process, the financial component of the offense is fundamentally different from the typical fraud case. That distinction is appropriately reflected not only in the Guidelines calculation but also in the Court's exercise of its discretion under § 3553(a) and § 3572.

Further, although others received the contract proceeds, there is no allegation that Mr. Spencer personally received the hundreds of thousands of dollars referenced in the

PSR, and the government has not identified any personal financial gain comparable to the contract value. Under these circumstances, the purposes of punishment are fully served by a modest fine that recognizes the seriousness of the offense without unnecessarily impairing Mr. Spencer's ability to continue supporting his family and rebuilding his life.

## VI. THE SENTENCE REQUESTED IS SUFFICIENT BUT NOT GREATER THAN NECESSARY

A just sentence is one that punishes the offense without losing sight of the person who committed it. Mr. Spencer has accepted responsibility, lost the career to which he devoted nearly thirty years, permanently forfeited the trust placed in him as a federal employee, and will carry the consequences of this conviction for the remainder of his life. A sentence of probation, coupled with a modest fine, fully reflects the seriousness of the offense while remaining faithful to Congress's command that the sentence imposed be sufficient, but not greater than necessary.

The USPO carefully evaluated those considerations and recommended probation. The defense respectfully submits that recommendation should be adopted.

The defense therefore respectfully requests that the Court impose:

- a term of probation consistent with the recommendation of the United States Probation Office;
- a modest fine substantially below the amount recommended in the Presentence Report;
- the mandatory special assessment; and
- such other conditions as the Court deems appropriate.

Dated: July 3, 2026

MCBROOM LAW, P.C.

*Katherine C. McBroom*

KATHERINE C. MCBROOM
Attorney for Defendant
JEFFREY SPENCER